**STATE, Plaintiff, v. PURK, Defendant.**

Municipal Court, Piqua.

No. 6869.   Decided October 3, 1952.

Bernard S. Keyt, Director of Law, Piqua, for the State.
James H. DeWeese, Pros. Atty., Piqua, for defendant.

## OPINION

By CROMER, J.

On September 20, 1952, being the above numbered case in this Court, an affidavit was filed by Louise Purk, former wife of the defendant, and mother of two legitimate children, namely: Thomas H. Purk, aged 8 and Eddie Purk, aged 15.

The affidavit states that one "Dwight Purk * * * being charged by law with the support of said minor children did willfully and purposely fail and neglect to provide said minor children with the proper and necessary food, shelter and clothing and medical care, contrary to the statute in such case made and provided."

It will be noticed that no particular statute of the General Code of Ohio is mentioned and all persons interested in the case, including the Court, were in doubt as to which statute—namely, §12970 or §13008 GC—was the one under which the affidavit was drawn.

The defendant, to the knowledge of the Bailiff, both resided and worked in Shelby County, Ohio—a county adjoining the County of Miami on the north. The defendant was arrested upon a warrant sent to the Sheriff of Shelby County and the Sheriff turned over the custody of the prisoner to the Bailiff of this Court. The defendant was released upon a cash bond deposited with the Police Department of the City of Piqua, Ohio.

The case was set for hearing at 3:00 o'clock P. M. on Friday, September 26, 1952.

The defendant was present with his counsel. It was stipulated that the offense charged was drawn under §12970 GC, which hereafter shall be called the misdemeanor statute and was not drawn under §13008 GC, which hereafter shall be called the felony statute.

Evidence showed that the defendant and the complainant were divorced on or about July 19, 1952. The custody of children was awarded to the wife-complainant. The decree of divorce was granted by the Common Pleas Court of Miami County, Ohio. The defendant-husband was ordered to pay to his former wife through the Child Welfare the sum of $15.00 per week, beginning with July 19, 1952.

Further, the evidence shows that from July 19, 1952 to September 20, 1952—a period of nine (9) weeks, the defendant paid the sum of Sixty-five ($65.00) Dollars instead of the amount assessed, namely, the sum of One Hundred and Thirty-five ($135.00) Dollars. Thus, the defendant was in arrears on the date of the filing of the affidavit, in the sum of Seventy ($70.00) Dollars. However, at the date of the trial, all or nearly all of this last named amount had been paid. It was agreed that the belated payment was not a defense but was a mitigating circumstance to be considered by the court.

The defendant did not testify in his own behalf. Only the complainant was called to the witness chair. After the direct examination was concluded, the attorney for the defendant asked questions concerning the defendant's residence and place of employment during the nine weeks of his alleged non-support. These questions were objected to upon the ground of relevancy. The objections were sustained, as the Court indicated upon the authority of §13011 GC and a number of cases decided both before and after the passage of §12970 GC. We shall quote this in full later in this opinion. Exception was noted to the Court's ruling upon the introduction of this evidence as to defendant's residence. Thus, the question of jurisdiction is raised clearly.

The misdemeanor statute (§12970 GC) with its title is paraphrased as follows:

"**Sec. 12970 GC. Torturing or neglecting children.**

Whoever * * * being the parent * * * of a child under the age of sixteen years * * * wilfully, unlawfully or negligently fails to furnish it necessary and proper food, clothing or shelter, shall be fined not less than Ten Dollars nor more than Two Hundred Dollars or imprisoned not more than six months or both."

The felony statute as amended in 121 Ohio Laws 557 (572) and effective January 1, 1946 is paraphrased to read as follows:

"**Sec. 13008 GC. Neglect to provide for child or pregnant woman; penalty.** Whoever, being the parent, or other person charged by law with the maintenance of a legitimate or illegitimate child under eighteen years of age * * * fails, neglects or refuses to provide such child * * * with the necessary or proper home, care, food and clothing, shall be imprisoned in a jail or workhouse at hard labor not less than six months nor more than one year, or **in the penitentiary** not less than one year nor more than three years."

The amended section, when compared with the section which was amended, is not different materially. It is noticed that the age is changed from 16 to 18 years. The word "parent" displaces the words "father" and "mother" in the earlier section. There is added to the new section the clause covering "a physically or mentally handicapped child under twenty-one years of age." The penalty is the same in both sections, the old and the new.

Offenses which may be punished by death or by imprisonment in the penitentiary, are felonies. Therefore, we conclude that §12970 GC is a misdemeanor statute and §13008 GC is a felony statute. See §12372 GC where felonies and misdemeanors are defined.

It appears that both the misdemeanor and felony statutes (§12970 and §13008 GC as amended) appear in Chapter 11: **"Offenses Against Minors."**

**Sec. 13009 GC,** relating to the abandonment of a child or pregnant woman, was amended at the same time, and effective at the same date as §13008 GC. Secs. 13008-1 and 13010 GC were not amended at that time.

**Sec. 13008-1 GC** stated under what circumstances "inability to provide" is a defense. **Sec. 13009 GC** as amended (121 Ohio Laws 557 [572]) relates the leaving of a child, with "intent to abandon" it. **Sec. 13010 GC,** which was not amended, provides that a convicted person "under either of the next two preceding sections" may give bond to insure the child having a proper home and care. This is an error, no doubt, because only one of "the next two preceding sections" charges an offense. **Sec. 13008-1 GC** declares what constitutes a defense.

It appears that §13008 and §13009 GC were both amended in 121 Ohio Laws and both became effective on January 1, 1946.

We quote in full §13011 GC which is the authority relied upon by the court in his ruling upon the evidence. We believed at that time that the section is only a codification of prior decisions of the Supreme Court on the question of venue. The statute, §13011 GC, reads as follows:

"Sec. 13011 GC. Where Offense in Preceding Sections committed. Any offense under the next three preceding sections shall be held to have been committed in any county in which such child * * * may be at the time such complaint is made."

The next three preceding sections obviously refer to §§13008, 13009 and 13010 GC and do not include §13008-1 GC.

· The question is whether or not a defendant residing in Shelby County, Ohio, during the entire period covered by the complaint, is liable criminally under the misdemeanor statute (§12970 GC) when the children reside with their mother in Miami County, Ohio.

It is conceded that this court, under the same circumstances, were the complaint filed under the felony statute (§13008 GC), would have the right to conduct a preliminary examination and bind over the defendant to the Grand Jury. In other words, while §13011 GC applies to an offense under the felony statute, does it also apply to the misdemeanor statute? Do the general venue statutes place the venue in Miami or Shelby County?

### THE OHIO CASES

Having laid the statutory background of so-called non-support actions, we now shall take up a number of Ohio cases in the inverse order of their rendition.

1. The first case we shall notice briefly is In Re, Cooper, 134 Oh St 40, 11 O. O. 416, 15 N. E. (2d) 1093 (6/8/1938). This is an action in habeas corpus filed in the Court of Appeals of Hamilton County. The petitioner sought release from his conviction under §12970 GC in the Municipal Court of Cincinnati. It was the claim of the petitioner that §12970 GC was repealed by certain sections of the new Juvenile Court Code, which were inconsistent, as he claimed, with §12970 GC. The Court of Appeals found that the misdemeanor section was not repealed and this holding was affirmed by the Supreme Court by unanimous decision.

In Re Cooper, supra, is important for its historical aspect of the statutes concerned. We quote the following:

"An examination of the history of §12970 GC reveals the fact that when it was originally enacted in 1884 as Section 6984a, Revised Statutes, its primary purpose was punishment of anyone who tortured or tormented an adult as well as a child or who failed to provide for children or others. In the codification of 1910, Sections 6984a, R. S. was apparently separated into two sections of the General Code, the first being §12428 GC providing penalties for any one who tortures or torments another or deprives such a person of necessary food, clothing or shelter, while §12970 GC provides penalties for similar offenses against minors. In the original section

6984a, R. S., we find the following, 'having the ability or means to support such child or children,' which language we do not find in §12970 GC."

We interpolate at this point to say that, although §12970 GC has read the same for almost fifty years, the last quoted language, once removed from the misdemeanor statute has never been returned to this particular statute, but very similar language, constituting a defense to the felony statute, appears in §13008-1 GC (110 Ohio Laws 7 [8]).

Continuing, In Re Cooper, supra, Judge Myers discusses other "offenses against minors." After referring to §1639-46 GC of Juvenile Code—which section was claimed to have repealed §12970 GC by reason of its inconsistency, the court declares that "other situations may explain the reason for the various sections." The court said: "Another section, §13008 GC, approaches the problem of failure to provide from still a different angle and there too the penalty is the same as in §13009 GC." The last mentioned section is the abandonment statute as we know it now.

We conclude, therefore, that the felony statute does not by implication repeal the misdemeanor statute.

2. Next, we shall notice the case of **Norman v. The State of Ohio, 109 Oh St 213.** This case also is valuable for its discussion of the various statutes which may throw some light upon the present problem. This case is a prosecution under the felony statute and was decided on January 15, 1924. The opinion is written by Judge Day and is concurred in by all members of the court. There were two cases. An order was made in the first case and this order was complied with for about two years. Defendant re-married and removed to West Virginia where he filed a petition for divorce from the child's mother. Defendant-father asked custody of the child in his West Virginia action in which the mother entered her appearance. Defendant-father filed pleas in abatement and in bar in Gallia County. They were denied him. In error proceedings to the Supreme Court, he alleged as his sixth ground the following:

"(6) That Norman was a resident of West Virginia during the entire time laid in the indictment and was not subject to jurisdiction of the Common Pleas Court of Gallia County."

The Court relies upon and follows the case of **Seaman v. State, 106 Oh St 177, 184, 140 N. E. 108, 110,** which case we shall notice next.

The court in the Norman case said: "The purpose of the statute (§13008 GC) and the section in **pari materia,** is well stated in languages of Clark, J: in the Seaman case."

Judge Day in the Norman case declares that R. S. 3140-2 passed in 1890 (87 **Ohio Laws 216)** was the ancestor of §13008 GC. The original Revised Statute was entitled **"To prevent abandonment and pauperism."** In 1908 **(99 Ohio Laws 228),** the above title was changed to read as follows: "An act to compel parents to maintain their children." We noticed heretofore that the ancestor of the misdemeanor statute was divided by the codifiers into two separate sections. Likewise, the felony statute "was carried into the codification as §13008 to §13021 GC, inclusive."

In the Norman case, the indictment charged **neglect** of the child but the verdict found the defendanty guilty of **abandonment.** We quote from the opinion at page 222:

"We are of opinion that §13008 GC charges a **form of abandoning the duty** that a parent owes to his child, and that the verdict returned in this case was responsive to the issues submitted by the trial judge." (Emphasis by Judge Day.)

It appears that the offense, if any, was committed in Gallia County, a year prior to the effective date of §13008 GC.

In short, the father-defendant was found guilty in Gallia County, Ohio, under the felony statute, although he was during the entire time, residing in West Virginia.

3. The leading case on the instant problem comes from Montgomery County and is the case of **Seaman v. The State of Ohio, 106 Oh St 177,** 140 N. E. 108 (12/19/1922).

The Seaman case also arose under §13008 GC, the felony statute. In this case under and by virtue of §13010 GC, the defendant entered into a bond. In addition he complies with a prior order of a court. (We presume it was an order made by the Common Pleas Court, although there was a hearing in bastardy before a Justice of the Peace), by tendering to the Clerk of the Court—and by keeping his tender good—the "accumulated arrearage," from the date of the child's birth to the date of the order. Notwithstanding, the giving of the bond and the tender aforesaid, the court nevertheless sentences the defendant to the penitentiary.

At the time of the indictment, the bastardy proceeding was still pending before the Justice. Seaman, by plea in abatement and demurrer, contended that the Common Pleas Court was without jurisdiction so long as the bastardy case was still pending before the Justice of the Peace.

Upon the authority of **State v. Veres, 75 Oh St 138 (1906),** the defendant's contentions were denied.

At this point we shall quote the syllabus of the Veres case, because this case also arose under §3140-2 GC, the remote ancestor of §13008 GC:

"The pendency of a bastardy proceeding instituted against

the father of an illegitimate child, is neither a bar to, nor ground for the abatement of a criminal prosecution subsequently commenced against him by the state under Section 3140-2 Revised Statutes."

The Seaman case also declares that "it is necessary to examine and consider the legislative history thereof."

At the risk of repeating what has been said already, we quote:

"The first enactment was the Act of April 16, 1890 (87 **Ohio Laws** 216), thereafter designated as Section 3140-2, R. S. Its title was "To prevent abandonment and pauperism."

"Thereafter on April 6, 1900 (94 **Ohio Laws** 105), the legislature amended Section 3140-2, R. S., and by such amendment included within the law liabilities penalties and conditions not thereinbefore provided for. The title was "To amend Section 3140-2 of the R. S. of Ohio."

"On April 28, 1908 (99 **Ohio Laws**, 230) the legislature repealed the original act of April 16, 1890 and the amendatory act of April 6, 1900, and passed the act which preceded §13008 GC. The act of April 28, 1908, was entitled "To compel parents to maintain their children."

"This last amendment was thereafter **again designated** Section 3140-2 R. S., and subsequently, under the codification of February 14, 1910, with slight changes in text in nowise varying the intent and effect of the enactment, it became §13008 to §13021 GC."

The court followed the rule of statutory construction already declared in three prior Ohio cases, and came to the following conclusion:

"The construction of §13008 GC, involves, therefore, a consideration and analysis of the accompanying and supplementary sections of the code, to-wit, all those appearing under the **sub-head** "Maintenance of Minors, etc. §13008 to §13021 GC."

The court said at page 184 of the Seaman case:

"The intent of this legislation was to compel persons charged by law with the support of designated dependants to meet the full measure of their obligation to such dependants and society. * * * it was the purpose to relieve society of the burden that properly belonged to one charged by law with its obligation."

The last paragraph is quoted in full in the Norman case at page 219 of the opinion of that case.

In the Seaman case, Judge Clark refers to several statutes appearing in the designated sub-head, indicating that all the statutes in said sub-head, including §13011 GC—the venue

statute—were all to be construed together, and without any reference to the misdemeanor statute, §12970 GC.

The Seaman case, although informative, is not too helpful, because the offense arose under the felony statute and the offense, if any, was committed in the county where the defendant resided. We repeat that the instant case arose under the misdemeanor statute and the defendant resided in an adjoining county other than that of his children.

4. We shall approach next the case of **State v. Sanner, 81 Oh St 303**, 90 N. E. 707 (1/18/1910). We quote in full the syllabus:

"(1) As to **some crimes** the physical presence of the accused, at the place where the crime is committed, is not essential to his guilt."

"(2) A parent may be guilty of the crime of failing to provide for his minor children, defined by the acct entitled an act to compel parents to maintain their children, passed April 28, 1908 **(99 Ohio Laws 228)**, although he is a **resident of another state** during the time laid in the indictment, and the venue of the crime is in the county where the child is when the complaint is made."

With reference to paragraph (1) of the above syllabus we quote from the opinion as follows:

"That as to **some crimes** the physical presence of the accused, at the place where the crime is committed, is not essential to his guilt is well settled. Burton v. United States, 202 A. S. 344-387; **Norris v. State, 25 Oh St, 217; Lindsey v. State, 38 Oh St, 507** and 12 Cyc. 237."

The Lindsey case, supra, related to the uttering and publishing in this state (Ohio) with intent to defraud, **by means of an innocent agent here,** although the defendant was never in Ohio. The defendant was found guilty.

The Norris case, supra, is one wherein goods were obtained by false pretense, Syllabus (3) reads as follows:

"3. Where A (Norris) by false pretense contained in a letter sent by mail, procures the owner of goods to deliver them to a designated common carrier in one county (Summit). consigned to the writer in another county (Clark), the offense of obtaining goods by false pretense is complete in the former county (Summit), and the offense must be prosecuted therein."

The defendant was indicted in Clark County but the offense was committed in Summit County. The reasoning is that the goods were delivered to defendant's agent in Akron. Delivery to defendant's agent was delivery to defendant himself. Hence, the crime was committed in Summit County and not in Clark County.

Both of the above last cited cases are agency cases which ought to distinguish them from the instant case.

Where non-support of defendant's child results in hunger, nakedness or homelessness, we feel somehow that the hunger, nakedness and homelessness occurs, if at all, where the destitute child happens to be at that particular moment. Certainly, this is the theory upon which §13011 GC was enacted. If jurisdiction in the instant case cannot be sustained on this theory, it cannot be maintained at all, we believe.

What we "most desire" at this point, is "more light" and we seek illumination in the case of **Burns v. Tarbox, 76 Oh St 520, 81 N. E. 761 (6/25/1907).**

5. The facts in the Burns case, supra, are quite similar to the instant case. It charged an offense under Section 6984a R. S., which is now **§12428 GC.** This section charges a misdemeanor. The present section is paraphrased to read as follows:

"**Sec. 12428 GC. Torturing or unlawfully punishing another.** Whoever * * * wilfully and negligently deprives him (another) of necessary food, clothing or shelter, shall be fined * * *."

The penalty may not be imprisonment in the penitentiary. Hence, it is a misdemeanor.

The facts in the Burns case are as follows: Carrie O. Burns filed an affidavit with the Mayor of Zenia, Greene County, Ohio under Section 6984 R. S., now **§12428 GC,** charging her former husband with wilfully and negligently failing to furnish necessary and proper food, clothing for their minor children under 16 years. The failure to provide covered approximately the first one-half of 1906. The affidavit and the warrant were both sufficient. The Sheriff of Greene County was issued the warrant and took Burns into his custody in Hamilton County, Ohio. The defendant sued out **habeas corpus** against Tarbox, the Sheriff, in Hamilton County. Burns offered evidence "to prove that he had not been in Xenia or Greene County for many years preceding his arrest, and that he was a resident of Cincinnati, Hamilton County, for many years, and that at no time during the period laid in the affidavit was he in Xenia or Greene County or a resident thereof."

The court dismissed the petition in **habeas corpus** and refused to consider the evidence as the same was not competent. The prisoner was remanded to the Sheriff of Greene County.

Continuing:

"**Held:** The evidence offered was not competent to work the discharge of B on **habeas corpus, the same being competent and appropriate as a part of his defenses to the charge before said Mayor.**"

Surely, the above holding is **obiter dictum.** The court only had before it, the action in **habeas corpus** which it dismissed.

Why should the court decide, in advance, a case which was to be held later in Greene County? The court in its **obiter** follows, **State v. Dangler, 74 Oh St 49, 77 N. E.** 271 which intimates that the Burns case should have been brought in Hamilton County.

At the bottom of page 523 and at the top of the page 524 of the Opinion, we find the following statement:

"* * * that at that time (first half of 1906) and now George W. Burns was and is the owner of a house and lot on College Hill in Hamilton County; that immediately upon the entering of said decree Carrie O. Burns broke into said house and has been living there ever since with all of said children, including the two under sixteen years * * *."

This language places both the father and his children in Hamilton County. Why, we ask, was an affidavit filed in Greene County? Even the **obiter** does not answer our present inquiry.

6. Since counsel has referred to the next case, **State v. Dangler, 74 Oh St 49, 77 N. E.** 271, we shall notice it briefly. It is the basis of the **obiter** in the Burns case just cited.

Facts: "The defendant * * * Dangler, a resident of Fulton County, Ohio, was, under Section 7017-3 R. S. indicted by a grand jury of Lucas County, Ohio, for the non-support of his mother, Margaret Dangler, who was a resident of Lucas County."

It was held that Lucas County did not have jurisdiction. The criminal action should have been brought in Fulton County, the place of the defendant's residence.

Former Section 7017-3 R. S. is now §12429 GC, and entitled **Abandonment of destitute, infirm or aged parent.** It is a misdemeanor. This section has been amended several times. The last clause now reads:

"Such neglect, non-support or abandonment shall be **deemed** to have been committed either in the county in which such person so neglected his or her parents (resides) or in the county in which such parent may be at the time of such neglect, non-support or abandonment."

The above amending clause was enacted after the decision in the Dangler case and for the purpose, no doubt, to by-pass that decision.

Without comment, we shall cite but three more cases, namely, **State v. Peters, 67 Oh St 494 (1903)**, Moore v. State, 18 C. C. (n. s.) 482 (1910) and Noonan v. State, 16 C. C. (n. s.) 243.

The general Venue statutes, §13426-1 to §13426-12 GC do not give us a satisfactory answer to our problem.

After an extended research, we conclude that §13011 GC, does not place the venue of the offense, under the misdemeanor statute, in Miami County. We believe that §13011

380

GC does not apply to §12970 GC, under which the defendant was charged. Therefore, the case is dismissed and the defendant is discharged. We feel that to apply §13011 GC, the venue statute, to §12970 GC, would be judicial legislation.

The statutes covering non-support are in hopeless confusion. When the Domestic Code was enacted recently, there should have been added a chapter covering non-support, because a study reveals only a mess that defies all explanation. The job is for the General Assembly, not for the courts.

In the future no affidavit will be accepted in this court for filing that does not state under what statute it is drawn. When the defendant resides outside of Miami County and the child unsupported resides in Miami County, the affidavit must be drawn under the felony statute.

**30 O. Jur., Parent and Child,** at **page 613** speaks of the care to be exercised by prosecuting officers and adds that "this degree of care has not always been exercised much to the consternation of the judges." Amen.